# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION - DAYTON

| | | |
|---|---|---|
| **KARLA HOWELL,** | : | **Case No. 1:19-cv-00373** |
| **c/o RITTGERS & RITTGERS** | : | |
| **12 East Warren Street** | : | **JUDGE DOUGLAS R. COLE** |
| **Lebanon, Ohio 45036** | : | |
| *as Administratrix of the Estate of* | : | **FIRST AMENDED** |
| *Cornelius Pierre Howell* | : | **COMPLAINT AND JURY DEMAND** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **NAPHCARE, INC.** | : | |
| **2090 Columbiana Road** | : | |
| **Suite 4000** | : | |
| **Birmingham, Alabama 35216** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CHRISTINA JORDAN** | : | |
| **c/o NaphCare, Inc.** | : | |
| **2090 Columbiana Road** | : | |
| **Suite 4000** | : | |
| **Birmingham, Alabama 35216** | : | |
| *Individually and in her Official* | : | |
| *Capacity* | : | |
| | : | |
| **and** | : | |
| | : | |
| **PIERETTE ARTHUR** | : | |
| **c/o NaphCare, Inc.** | : | |
| **2090 Columbiana Road** | : | |
| **Suite 400** | : | |
| **Birmingham, Alabama 35216** | : | |
| *Individually and in her Official* | | |
| *Capacity* | | |
| | | |
| **and** | | |

**JIM NEIL**
**1000 Sycamore Street**
**Suite 100**
**Cincinnati, Ohio 45202**
***In his Official Capacity as Sheriff of the***
***Hamilton County Sheriff's Department***

**and**

**MATTHEW COLLINI**
**1000 Sycamore Street**
**Suite 100**
**Cincinnati, Ohio 45202**
***Individually and in his Official Capacity***
***as a Deputy of the Hamilton County***
***Sheriff's Department***

**and**

**DANIEL ERWIN**
**1000 Sycamore Street**
**Suite 100**
**Cincinnati, Ohio 45202**
***Individually and in his Official Capacity***
***as a Deputy of the Hamilton County***
***Sheriff's Department***

**and**

**JUSTIN HUNT**
**1000 Sycamore Street**
**Suite 100**
**Cincinnati, Ohio 45202**
***Individually and in his Official Capacity***
***as a Deputy of the Hamilton County***
***Sheriff's Department***

**And**

**BRAD BUCHANAN**
**1000 Sycamore Street**
**Suite 100**
**Cincinnati, Ohio 45202**
*Individually and in his Official Capacity*
*as a Deputy of the Hamilton County*
*Sheriff's Department*

       **Defendants.**

---

  Pursuant to the Court's January 23, 2020 Minute Entry, now comes Plaintiff, Karla Howell, as Administratix of the Estate of Cornelius Pierre Howell ("Plaintiff"), by and through counsel, and for her First Amended Complaint states as follows:

<u>**PRELIMINARY STATEMENT**</u>

  1.  This civil rights, wrongful death, and survivorship action challenges Defendants' failure to properly supervise and provide adequate medical care and custodial supervision to Cornelius Pierre Howell ("Pierre") while he was incarcerated at the Hamilton County Justice Center (the "Jail") on December 9, 2018. As a result of Defendants' actions, Pierre was confined to a restraint chair for over four hours with virtually no supervision and absolutely no medical attention or observation following a painful and debilitating sickle cell crisis.  Pierre's sister, Karla Howell ("Karla"), brings this action as Administratrix of his estate to secure fair compensation for the pain and suffering endured by Pierre prior to his death, for the loss of services and society to Pierre's family, and encourage Defendants to provide appropriate treatment and supervision for future inmates and to eliminate the use of restraint chairs in the Jail.

## PARTIES

2.     Karla is Pierre's sister and brings suit as the Administratix of his estate for the benefit of his next of kin and to secure fair compensation for the pain and suffering endured by Pierre prior to this death.

3.     Defendant NaphCare, Inc. ("NaphCare"), upon information and belief, is a corporation duly incorporated under the laws of the State of Alabama which contracted with the Hamilton County Sherriff's Department and Defendant Sheriff Jim Neil ("Neil") to provide medical treatment and services to the inmates of the Jail. NaphCare is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

4.     Defendant Christina Jordan ("Jordan"), upon information and belief, is an employee, agent, and/or contractor of NaphCare and is duly licensed to practice medical, nursing and/or perform therapeutic services in the State of Ohio. Jordan is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

5.     Defendant Pierette Arthur ("Arthur"), upon information and belief, is an employee, agent, and/or contractor of NaphCare and is duly licensed to practice medical, nursing and/or perform therapeutic services in the State of Ohio. Arthur is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

6.     Defendant Neil is, and was at all times relevant to this action, the duly elected Sheriff of Hamilton County, Ohio. At all times relevant to this Complaint, Neil had custody, control, and supervision of inmates, including Pierre, supervision over the medical care provided at the Jail, and the authority to cancel the contract for medical services with NaphCare. Neil is a

"person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his official capacity.

7.     Defendant Matthew Collini ("Collini") is, and was at all times relevant to this action, an employee, agent, and/or contractor of Neil. At all times relevant to this Complaint, he was responsible for the care, custody, control, and supervision of inmates at the Jail, including Pierre. Collini is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

8.     Defendant Daniel Erwin ("Erwin") is, and was at all times relevant to this action, an employee, agent, and/or contractor of Neil. At all times relevant to this Complaint, he was responsible for the care, custody, control, and supervision of inmates at the Jail, including Pierre. Erwin is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

9.     Defendant Justin Hunt ("Hunt") is, and was at all times relevant to this action, an employee, agent, and/or contractor of Neil. At all times relevant to this Complaint, he was responsible for the care, custody, control, and supervision of inmates at the Jail, including Pierre. He was at all times relevant to this Complaint also responsible for the supervisor of other Jail staff, including but not limited to Erwin and Collini. Hunt is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

10.     Defendant Brad Buchanan ("Buchanan") is, and was at all times relevant to this action, an employee, agent, and/or contractor of Neil. At all times relevant to this Complaint, he was responsible for the care, custody, control, and supervision of inmates at the Jail, including Pierre. He was at all times relevant to this Complaint also responsible for the supervisor of other

Jail staff, including but not limited to Erwin and Collini. Buchanan is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the dispute between the parties pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4) because Plaintiff's civil causes of action arise under the Constitution and laws of the United States, including but not limited to, 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendments to the U.S. Constitution.

12.     This Court also has supplemental jurisdiction to hear Plaintiff's related state law causes of action pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this Court sits in the district where the substantial part of the events or omissions in connection with Plaintiff's claims arose.

## FACTS

14.     On December 2, 2018, Pierre was arrested and taken to the Jail.

15.     Upon booking, Pierre was under the custody and control of Neil at the Jail.

16.     Having previously been incarcerated at the Jail, Neil and NaphCare, as the Jail's contracted medical provider, knew upon intake that Pierre had sickle cell disease, a chronic condition which manifests itself through painful and debilitating crises triggered by stress.

17.     During previous incarcerations in 2016, when Pierre complained of intense pain brought about by his sickle cell disease, he was immediately taken to the emergency room at the University of Cincinnati Medical Center.

18.     On December 7, 2018, Pierre reported to a NaphCare employee that he was experience pain arising out of his sickle cell disease.

19.     NaphCare's employee noted at this time that he had generalized joint pain but ordered nothing more than increased fluids.

20.     At around 5:30 p.m. on December 9, 2018, Pierre got into an altercation with his cellmate.

21.     Following the altercation, Pierre had a bloody lip and was breathing heavily and taken to the medical unit of the Jail for evaluation.

22.     The medical unit is operated by NaphCare and overseen by Neil.

23.     While in the medical unit, Pierre began writhing with back pain and complained that he could not feel his legs.

24.     While still in medical, Pierre's body began to move abnormally, he was spitting up, and he was making strange noises.

25.     He thereafter was rolling on the ground complaining loudly that his back hurt and that he could still not feel his legs.

26.     Many within the medical unit at this time felt his behavior and complaints warranted medical evaluation at the University of Cincinnati Medical Center.

27.     Rather than send him to the hospital, Jordan, as the nurse in charge at the time, elected to confine Pierre to a restraint chair.

28.     Jail policy permits the use of restraint chairs only when authorized by medical staff or security personnel.

29.     The restraint chair cannot be used as a means of punishment.

30.     Rather, it can only be used to prevent self-injury, injury to others, property damage, or when an inmate displays extremely aggressive or disruptive behavior and other techniques are unsuccessful.

31.     Hunt and Buchanan, as Jail supervisors of the medical pod at the Jail, ultimately approved of Jordan's order of the use of the restraint chair on Pierre.

32.     When an inmate is placed in a restraint chair, it is akin to suicide watch, and as a result, he must be observed every ten minutes by Jail employees and medical staff, including but not limited to NaphCare employees and Jail staff.

33.     These ten-minute observations are to be logged onto the Jail's Suicide Watch and Restraint Form with the entries noting the inmate's condition, activities at the time of observation, and any significant developments.

34.     Jail policy further provides that the inmate should be offered the opportunity to use the restroom, receive drinking water, and be considered for removal at least hourly.

35.     Removal decisions are made collectively by Jail staff and by NaphCare staff.

36.     Jail policy also requires ten-minute exercise of each limb every two hours while an inmate is confined to a restraint chair.

37.     Medical staff are also required to do a full assessment of an inmate every two hours.

38.     If an inmate is confined to the restraint chair for longer than four hours, a psychiatrist is to be consulted according to Jail policy.

39.     On December 9, 2018, contrary to Jail policy, Jordan made the decision to place Pierre in a restraint chair because he was "yelling, fell on the floor, was rolling around, and was non-compliant with medical care."

40. At the time she made this decision, Jordan knew that Pierre's blood sugar was 78, he was sweating profusely, and was unable to swallow a glucose tablet.

41. At the time she made this decision, Jordan also knew that Pierre had sickle cell disease and was complaining that he could not feel his legs.

42. Despite this knowledge, Jordan stated that she felt Pierre was experiencing a mental health issue and therefore the restraint chair was appropriate.

43. As officers attempted to place Pierre in the restraint, he complied with all verbal commands and no force was used.

44. When placed in the chair, Pierre immediately slid to the floor continuing to complain that his back hurt and that he could not feel his legs.

45. As Jail staff and medical personnel attempted to secure Pierre in the restraint chair, he would fall to the floor several additional times continuing to complain that his back hurt and that he could not feel his legs.

46. Jordan pronounced that Pierre would not be going to the hospital despite suggestions to do so by other personnel.

47. At 5:43 p.m. on December 9, 2018, Pierre was eventually physically secured in the chair and taken to a cell within the medical unit.

48. Following his placement in a cell, he would be checked by NaphCare staff – Arthur - on only one occasion at 6:20 p.m.

49. Upon information and belief, Arthur provided no meaningful assessment of Pierre and made no effort to evaluate his removal from the restraint chair.

50. Following the placement of the restraint chair in a cell, Erwin was responsible for conducting ten-minute checks on Pierre.

51.     Contrary to Jail policy which required Erwin to note Pierre's condition, activities at the time of observation, and any significant developments, he simply wrote "Chair" for each entry between 5:40 p.m. and 8:10 p.m.

52.     On Jail logs, Erwin documented that he conducted checks of Pierre every ten minutes.

53.     Video surveillance from the Jail unequivocally shows that Erwin failed to conduct many of the ten-minute checks of Pierre which he had documented.

54.     After Pierre had been in the restraint chair for two hours, Erwin indicated on the Restraint Chair form that Pierre did not want any limb rotation because he appeared to be sleeping.

55.     In interviews following Pierre's death, Erwin admitted that he had no actual contact with Pierre during his checks and made these determinations by merely looking through the cell window.

56.     At no point does the Restraint Form indicate that Erwin ever offered Pierre water or an opportunity to use the restroom.

57.     At 8:20 p.m., Collini was responsible for conducting the ten-minute checks on Pierre.

58.     Like Erwin, and contrary to Jail policy, Collini failed to note Pierre's condition, activities at the time of observation, and any significant developments on the Restraint Chair form.

59.     Rather, he too simply wrote "Chair," an observation he similarly made merely by looking through the cell window.

60.     Like Erwin, Collini documented on Jail logs that he conducted checks of Pierre every ten minutes.

61.     Video surveillance from the Jail again unequivocally shows that Collini also failed to conduct many of the ten-minute checks of Pierre which he had documented.

62.     At no point does the Restraint Form indicate that Collini ever offered Pierre water or an opportunity to use the restroom.

63.     At approximately 9:45 p.m. – approximately four hours after Pierre had been placed in the restraint chair – Hunt, as a Jail supervisor conducted a security round to consider Pierre for removal from the restraint chair.

64.     Jail Policy requires these security rounds to be conducted at a minimum of two hours if an inmate is in a restraint.

65.     It was during this 9:45pm security round  that a member of the Jail staff finally conducted a physical examination of Pierre.

66.     Unfortunately, at the time of this examination, Pierre was deceased and had been for quite some time.

67.     Despite suggesting that Pierre was having a mental health crisis, no psychology or psychiatry referral was ever made by Jordan.

68.     Following Pierre's death, Neil ordered an internal investigation.

69.     Despite the blatant failures to follow Jail policies, the investigation focused primarily on the conduct of the cellmate and whitewashed the deliberate indifference of Jail employees and contractors.

70.     Upon information and belief, no surveillance footage was reviewed by Jail investigators.

71.     Had this surveillance footage been reviewed, Jail investigators would have seen that Collini and Erwin did not conduct checks of Pierre as purportedly documented.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 –All Defendants)

72.     Plaintiff incorporates her previous allegations as if fully rewritten herein.

73.     Neil and NaphCare had policies, practices, and customs that caused inmates placed in restraint chairs to needlessly suffer by failing to provide them with adequate supervision and health care.

74.     Such policies were the moving force behind the injuries and death suffered by Pierre, and by following such policies, Defendants were deliberately indifferent to Pierre's serious medical needs.

75.     The use of force employed on Pierre was unreasonable, excessive, and violated clearly established law as well as Jail policy.

76.     Neil further had the responsibility and duty to monitor NaphCare, Jordan, Arthur, Collini, Erwin, Hunt, and Buchanan's performance as employees, agents, and/or contractors and ensure that Jail inmates were receiving adequate medical care and supervision. He failed to do so.

77.     Defendants have thus, under color of law deprived Pierre of the rights, privileges, and immunities secured to him by the U.S. Constitution, including but not limited to the Fourteenth Amendment's right to be free from excessive force, the right to be protected, and the right to adequate medical care when incarcerated.

78.     Neil and NaphCare have further failed to adequately train and supervise the Jail medical staff, including but not limited to Jordan and Arthur, concerning their assessments, treatment, and supervision of inmates confined to restraint chairs and were thus deliberately indifferent to the medical needs of Pierre.

79. As a direct and proximate result of the aforementioned violations of Pierre's civil and constitutional rights actionable under 42 U.S.C. § 1983, Pierre suffered the injuries, damages, and ultimately death described herein.

## SECOND CAUSE OF ACTION
### (Negligence by NaphCare, Jordan, and Arthur)

80. Plaintiff incorporates her previous allegations as if fully rewritten herein.

81. NaphCare had a duty to provide qualified personnel who were adequately trained and supervised to perform medical services at the Jail to inmates such as Pierre.

82. NaphCare further had a duty to use reasonable care in determining the qualifications and adequate performance of its contractors, agents and employees who provide medical services to Jail inmates such as Pierre.

83. Additionally, NaphCare had a duty to establish appropriate policies and procedures concerning the medical treatment and supervision of inmates at the Jail such as Pierre

84. NaphCare and its employees, agents, and/or contractors, including but not limited to Jordan and Arthur, owed a duty of reasonable care to Pierre.

85. NaphCare, their contractors, employees, and agents, including but not limited to Jordan and Arthur, breached the duties owed to Pierre by failing to provide him with appropriate medical care, treatment, and supervision.

86. As a direct and proximate result of the negligence of NaphCare, Jordan, and Arthur, Pierre suffered the injuries, damages, and ultimately death described herein.

## THIRD CAUSE OF ACTION
### (Failure to Train – Neil)

87. Plaintiff incorporates her previous allegations as if fully rewritten herein.

88.     At all times relevant to this action, Neil was responsible for making government policy and for oversight of the functions and duties of the Hamilton County Sheriff's Department.

89.     Neil failed to establish adequate training programs in order to properly train his officers and employees to carry out their official duties in using reasonable force against pre-trial detainees such as Pierre who were confined to restraint chairs.

90.     Neil's failures to adequately train his officers, including but not limited to Collini Erwin, Hunt, and Buchanan, amounted to deliberate indifference to the fact that inaction would obviously result in the violation of its citizens' Fourteenth Amendment rights to be free unreasonable and excessive force.

91.     Neil's failure to adequately train Jail staff, including but not limited to Collini Erwin, Hunt, and Buchanan was a moving force behind the excessive force used on Pierre.

92.     As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights actionable under 42 U.S.C. § 1983, Pierre was deprived of rights, privileges, and immunities secured to him by the U.S. Constitution, including but not limited to the right to be free of excessive force.

**FOURTH CAUSE OF ACTION**
(Inadequate Supervision – Neil, Hunt, and Buchanan)

93.     Plaintiff incorporates her previous allegations as if fully rewritten herein.

94.     At all times relevant to this action, Neil was responsible for making government policy and for oversight of the functions of the Hamilton County Sheriff's Department.

95.     At all times relevant to this action, Neil was afforded supervisory oversight of officers of the Hamilton County Sheriff's Department including Collini, Erwin, Hunt, and Buchanan.

96. By virtue of their positions, Hunt and Buchanan were likewise afforded supervisory oversight of officers of the Hamilton County Sheriff's Department including Collini and Erwin.

97. Neil failed to adequately supervise the Hamilton County Sheriff Department officers and employees, including but not limited to Collini, Erwin, Hunt, and Buchanan in carrying out their official duties when utilizing force against pre-trial detainees who were confined to restraint chairs.

98. Hunt and Buchanan likewise failed to adequately supervise the Hamilton County Sheriff Department officers, employees, and contractors in carrying out their official duties when they permitted Pierre to be placed in a restraint chair for reasons not authorized by Jail policy, and by improperly allowing the utilization of force against pre-trial detainees who were confined to restraint chairs.

99. The failure on behalf of Neil, Hunt, and Buchanan to adequately supervise the officers, employees, and contractors at the Jail amounted to deliberate indifference to the fact that inaction would obviously result in the violation of pretrial detainee's, including Pierre, Fourteenth Amendment rights to be free from excessive force.

100. As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights actionable under 42 U.S.C. § 1983, Pierre was deprived of rights, privileges, and immunities secured to him by the U.S. Constitution, including but not limited to the right to be free from excessive force.

## FIFTH CAUSE OF ACTION
(Ratification – Neil)

101. Plaintiff incorporates her previous allegations as if fully rewritten herein.

102. At all times relevant to this action, Neil was responsible for making government policy and for oversight of the functions of the Hamilton County Sheriff's Department.

103.    Neil knew or should have known that there were significant concerns about the conduct of his employees, agents, and/or contractors, including but not limited to Collini and Erwin, following the death of Pierre.

104.    Despite these concerns, Neil ratified their conduct by endorsing the results of the Jail's internal affairs investigation.

105.    Specifically, Neil found that the actions of all Hamilton County Sheriff's Department employees, including but not limited to Collini and Erwin, was appropriate despite them performing no meaningful observation of Pierre while he was confined to a restraint chair.

106.    Instead, the Hamilton County Sheriff's Department conducted a flawed, incomplete and skewed investigation solely for the purpose of protecting Collini and Erwin.

107.    As a direct and proximate result of the aforementioned violations of Plaintiff's civil and constitutional rights actionable under 42 U.S.C. § 1983, Pierre was deprived of rights, privileges, and immunities secured to him by the U.S. Constitution, including but not limited to the right to be free from excessive force.

## SIXTH CAUSE OF ACTION
(Wrongful Death-All Defendants)

108.    Plaintiff incorporates her previous allegations as if fully rewritten herein.

109.    Defendants' actions caused the wrongful death of Pierre described herein resulting in damages recoverable under Ohio Revised Code § 2125.02.

110.    As a direct and proximate result of Defendants' actions, Pierre suffered the injuries, damages, and ultimately death described herein.

111.    As a further direct and proximate result of Pierre's wrongful death, his survivors and/or heirs have suffered permanent damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention, protection, advice,

guidance, counsel, instruction, training, and education, as well as the loss of prospective inheritance.

112. As a further direct and proximate result of Pierre's wrongful death, Pierre's survivors, next of kin and/or heirs have suffered permanent damages, including but not limited to, grief, depression, and severe emotional distress. They have incurred funeral bills and other expenses.

## SEVENTH CAUSE OF ACTION
### (Survivorship Action - All Defendants)

113. Plaintiff incorporates her previous allegations as if fully rewritten herein.

114. As a direct and proximate result of Defendants' actions described herein, Pierre consciously experienced pain and suffering prior to his death.

115. Damages for this conscious pain and suffering are recoverable under Ohio Revised Code § 2305.21.

**WHEREFORE,** Plaintiff respectfully demands judgment against Defendants in excess of $75,000, jointly and severally, for compensatory damages to be proved at trial, punitive damages because the actions of Defendants were malicious and intended to cause Plaintiff severe harm, reasonable attorney's fees, costs and all other relief to which he may be lawfully entitled.

Respectfully submitted,

/s/ Ryan J. McGraw

_____

Konrad Kircher (0059249)
Ryan J. McGraw (0089436)
RITTGERS & RITTGERS
12 East Warren Street
Lebanon, Ohio 45036
Tel.: 513/932-2115
Fax: 513/934-2201
konrad@rittgers.com

ryan@rittgers.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands trial by a jury of her peers as to all issues so triable herein.

/s/ Ryan McGraw

_____
Ryan J. McGraw (0089436)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's CM/ECF system and that a copy was served electronically via that system this 6th day of March, 2020:

/s/ Ryan J. McGraw
Ryan J. McGraw (0089436)