UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KARLA HOWELL,

        Plaintiff,

    v.

NAPHCARE, INC., et al.,

        Defendants.

Case No. 1:19-cv-373
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on a Motion for Relief from Judgment (the "Motion," Doc. 112), filed by Plaintiff Karla Howell, on behalf of the estate of Cornelius Pierre Howell (hereafter "Howell's estate"). Howell's estate argues that, based on a Sixth Circuit decision issued after briefing was complete, but before the Court issued its Order, the Court applied the wrong legal standard to the pending claims for deliberate indifference to serious medical need. The Court agrees. But because the Court would have reached the same result under the new standard, the Court nonetheless **DENIES** the Motion (Doc 112).

## FACTUAL BACKGROUND[1]

On December 2, 2018, Cornelius Pierre Howell ("Howell") was arrested and detained at the Hamilton County Justice Center (the "Jail"). (Guy Decl., Doc. 72, #868). Howell completed a medical intake with NaphCare, Inc. ("NaphCare"), the

---

[1] This summary reproduces and abbreviates the Court's recounting of the facts of this case in its previous Opinion (Doc. 105) granting Defendants' Motions for Summary Judgment (Docs. 84, 85).

Jail's contracted medical provider, at which he disclosed that he had sickle cell disease. (Perdikakis Decl., Doc. 79-1, #1290). Howell received a medical screening on December 3, 2018, from a Licensed Practical Nurse employed by NaphCare who charted Howell's sickle cell disease and ADHD diagnosis. (*Id.* at #1282, 1290). Howell then had a chronic care visit with a nurse practitioner employed by NaphCare on December 7, 2018. (*Id.* at #1266–73). That practitioner noted that Howell reported taking Oxycodone for his sickle cell pain, which had worsened since his incarceration. (*Id.* at #1267).

On December 9, 2018, around 5:00 p.m., Howell had a fight with another inmate[2] housed at the Jail. (Hunt Dep., Doc. 69-8, #547). Guards brought Howell to the medical unit in a wheelchair. (Guy Decl., Doc. 72, #873). Howell was yelling that he was in pain and at one point fell out of his wheelchair and rolled around on the floor. (Roettker Dep., Doc. 69-13, #720). Nurse Christina Jordan evaluated Howell. (Jordan Dep., Doc. 69-9, Ex. 33, #583). Jordan took several of Howell's vital signs but was unable to obtain his temperature. (*Id.*). Jordan was unconcerned by Howell's vital signs, which were generally within normal ranges. (*Id.* at #562). Jordan knew Howell had sickle cell disease from reviewing his electronic medical record. (*Id.* at #556). Howell also said so when Jordan examined him. (*Id.* at #583). Howell complained that he could not feel his legs. (Guy Decl., Doc. 72, #873). Jordan observed Howell rolling on the floor yelling with his eyes very wide open. (Jordan Dep., Doc. 69-9, #556).

---

[2] This Opinion uses the term "inmate" generically to refer to all persons housed at the facility, the term "detainee" to refer to those inmates who are held in pretrial detention, and the term "prisoner" to refer inmates who have been convicted and are serving sentences.

Howell refused hydration and spit out a glucose tablet a nurse attempted to give him. (*Compare* NaphCare Proposed Undisputed Facts, Doc. 85-1, #1583, *with* Resp. to Proposed Undisputed Facts, Doc. 96-1, #1919). Howell also refused to provide a urine sample. (Jordan Dep., Doc. 69-9, #558, 568).

Nurse Jordan thought that Howell was likely having a psychiatric episode. (*Id.* at #557; *see also* Resp. to Proposed Undisputed Facts, Doc. 96-1, #1919). Based on that determination, she suggested that the Jail officers transport Howell to the psychiatric department. (Jordan Dep., Doc. 69-9, #569). Officers put Howell into a restraint chair around 5:40 p.m. (Hunt Dep., Doc. 69-8, #547). Howell did not resist placement in the chair. (Pierani Dep., Doc. 69-12, #652). Once he was in the chair, officers took Howell to the mental health unit.

Around 6:06 p.m., Licensed Practical Nurse Pierette Arthur, another NaphCare employee, observed Howell. (Surveillance Video G-21 #1 JC 265 5:45–6:45 p.m., Barth Dep., Ex. 12, Doc. 69-2, #288). Howell was yelling, and Arthur decided to walk away to allow Howell to calm down. (Arthur Dep., Doc. 78, #1196). Arthur later spoke to Jordan about Arthur's observations regarding Howell's condition before leaving work for the day, around 7:30 p.m. (*Id.* at #1200; *see also* NaphCare Proposed Undisputed Facts, NaphCare Mot. for Summ. J. Ex. 1, Doc. 85-1, #1586).

Officers Matthew Collini and Daniel Erwin were responsible for observing Howell during his time in the restraint chair. (Roettker Dep., Doc. 69-13, #714). Jail policy is that staff are normally expected to check on inmates in restraint chairs every ten minutes. (Neil Dep., Doc. 69-11, #621–22). Jail staff must also log the status of

3

inmates in a restraint chair each time they check on the inmate. (Buchanan Dep., Doc. 69-3, #299). Inmates in restraint chairs are placed in one of two cells in the mental health department. (Hunt Dep., Doc. 69-8, #515). Inmates are positioned so they face a small window, which allows officers to see them from outside the cell. (*Id.*).

Officer Justin Hunt filled out the first two entries on the log concerning Howell's time in the restraint chair. (*Id.* at #524–25). Then, Collini and Erwin filled out numerous log entries for checks they purportedly conducted on Howell. Taken together, these entries showed that a check occurred approximately every ten minutes. (Roettker Dep., Ex. 6, Doc. 69-13, #714). It is now undisputed, however, that Erwin and Collini made false entries in the log; in fact, they conducted fewer than half of the checks they recorded. (Collini Dep., Doc. 69-4, #349; Erwin Am. Disc. Resp., Doc. 71-2, #862). That being said, Collini testified he saw Howell alive and seated in the chair at 7:24 p.m. (Collini Dep., Doc. 69-4, #346).

At about 9:45 p.m., Hunt and another officer discovered Howell dead in the restraint chair when they arrived to evaluate him for release. (Guy Decl., Doc. 72, #874). The parties dispute the cause of Howell's death. The NaphCare Defendants say that Howell died of a sudden cardiac arrest, which they claim resulted, at least in part, from a prior chest stab wound that had required open heart surgery approximately a year earlier. (NaphCare Proposed Undisputed Facts, Doc. 85-1, #1587; Evans Decl., Doc. 79-2, #1305; Kiss Decl, Doc. 79-3, #1314–15). Howell's estate argues, by contrast, that, over the course of the roughly four hours he spent in the restraint chair, Howell died of rhabdomyolysis, a complication from sickle cell

disease, and that this complication was triggered by Howell's fight with the other inmate. (Steinberg Expert Report, Doc. 87-3, #1693).

## PROCEDURAL BACKGROUND

Howell's estate filed this suit on May 20, 2019. (Compl., Doc. 1). As relevant here, the Complaint alleges that Officers Erwin, Collini, and Hunt, and Hamilton County Sheriff Jim Neil (the "Hamilton County Defendants"), as well as Nurse Jordan, Nurse Arthur, and NaphCare (the "NaphCare Defendants"), violated the Fourteenth Amendment through deliberate indifference to Howell's serious medical need. (*Id.* at #10).

On March 15, 2021, both the Hamilton County Defendants and the NaphCare Defendants separately moved for summary judgment on all of Howell's estate's claims. (Docs. 84, 85). As relevant here, all Defendants argued that Howell's estate created no genuine dispute as to whether any of them consciously disregarded Howell's serious medical need. (Hamilton Cnty. Mot. for Summ. J., Doc. 84, #1524, 1532). Briefing on those motions was completed on April 26, 2021. The Court heard oral argument on October 14, 2021.

The Court issued an Opinion (Doc. 105) on November 2, 2021. The Court granted summary judgment to all Defendants on all of Howell's estate's federal claims, including its deliberate indifference claims. But the Court's Opinion failed to consider the Sixth Circuit's then-recent decision in *Brawner v. Scott County, Tennessee*, 14 F.4th 585 (6th Cir. 2021), which stated that it was changing the legal standard that applies to deliberate indifference claims by pretrial detainees like

5

Howell.[3] Under the pre-*Brawner* standard, which the Court applied in its Opinion, the Fourteenth Amendment standard for deliberate indifference claims by pretrial detainees was the same as the Eighth Amendment standard that applies when a postconviction prisoner advances a deliberate indifference claim. *See Brawner*, 14 F.4th at 591. Under that standard, such claims included a subjective component. That subjective component required the plaintiff to show that a defendant actually knew of a serious medical risk to the plaintiff and then consciously disregarded that risk. *Id.* In its previous Opinion, the Court's conclusion—that, as a matter of law, the Defendants were not indifferent to Howell's serious medical need—relied on the absence of a genuine dispute as to the subjective component thus understood. (*See* Op., Doc. 105, #2008).

In *Brawner*, though, the Sixth Circuit opined that courts should apply a lower standard to Fourteenth Amendment deliberate indifference claims by pretrial detainees than the standard that applies to Eighth Amendment claims by postconviction inmates. *See Brawner*, 14 F.4th at 596. In particular, under *Brawner*, the Sixth Circuit abrogated (*see id.* at 594), or at least modified (*see id.* at 596; *see also Hyman v. Lewis*, No. 21-2607, 2022 WL 682543, at *2 (6th Cir. Mar. 8, 2022) ("under the modified second prong")), the subjective component that previously had applied to such claims. According to *Brawner*, a pretrial detainee need only show that a defendant "acted … recklessly in the face of an unjustifiably high risk of harm that

---

[3] No party brought the case to the Court's attention, despite the fact that argument occurred in this case some three weeks *after* the Sixth Circuit decided *Brawner*.

is either known or so obvious that it should be known." *Brawner,* 14 F.4th at 596. (citation and internal quotation marks omitted).

On January 18, 2022, Howell's estate filed the instant Motion (Doc. 112), bringing *Brawner* to the Court's attention and asking the Court to set aside the judgment in favor of Defendants only as to Howell's estate's deliberate indifference claims. Both sets of Defendants opposed (Docs. 115, 116) Howell's estate's Motion (Doc. 112). Defendants argue, among other things, that the result in this case would be the same even under *Brawner*'s new, purportedly lower, recklessness standard. (*See* Hamilton Cnty. Resp. in Opp'n to Mot. ("Hamilton Cnty. Opp'n"), Doc. 115, #2189; NaphCare Resp. in Opp'n to Mot. ("NaphCare Opp'n"), Doc. 116, #2201). Howell's estate replied in support (Doc. 118) of its Motion (Doc. 112) on February 22, 2022. The matter is now fully briefed and before the Court.

## LEGAL STANDARD

Howell's estate moves for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), a catch-all provision following an enumerated series of grounds for relief from judgment that permits a district court to set aside a judgment for "any other reason that justifies relief." According to the Sixth Circuit, Rule 60(b)(6) "vests courts with a deep reservoir of equitable power to vacate judgments 'to achieve substantial justice' in the most 'unusual and extreme situations.'" *Zagorski v. Mays*, 907 F.3d 901, 904 (6th Cir. 2018) (quoting *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). A court presented with a Rule 60(b)(6) motion should "intensively balance numerous factors, including the competing policies of the finality of judgments and

7

the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* (quoting *McGuire v. Warden*, 738 F.3d 741, 750 (6th Cir. 2013) (internal quotation marks omitted)).

Because the judgment Howell's estate seeks to set aside was entered pursuant to the Court's Opinion (Doc. 105) regarding Defendants' Motions for Summary Judgment (Docs. 84, 85), the legal standard for a motion for summary judgment is also relevant. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Lansing Dairy*, 39 F.3d at 1347.

Granting summary judgment depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In sum, the nonmoving party, at this stage, must present some "sufficient disagreement" that would necessitate submission to a jury. *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, this Court

must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## LAW AND ANALYSIS

In *Brawner*, the Sixth Circuit stated it was adopting a new standard for deliberate indifference claims involving pretrial detainees. Rather than meeting the subjective component that applies to an Eighth Amendment deliberate indifference claim, a detainee need only show that a defendant "acted deliberately (not accidentally), [and] recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596. To be sure, "[m]ere negligence is insufficient." *Id.* But a pretrial detainee need not prove "subjective intent," but rather "something akin to reckless disregard." *Id.* (citations and internal quotation marks omitted).

Howell says that this standard is different from the one that the Court applied to his claim, and that the different standard requires a different result on summary judgment in his case. As to the former, though, the Court is not convinced that *Brawner* actually changed things much. But more importantly, as to the latter, the Court is convinced that the new *Brawner* standard (to the extent that it is new) does not change the appropriate outcome here.

9

To be sure, *Brawner* suggests that it changed the standard so that the test that applies to detainees' deliberate indifference claims is now solely objective. But the test for recklessness that the *Brawner* court adopted—failure to act in the face of an unjustifiably high risk of harm that is known or so obvious that it should have been known—still seems to include what amounts to a subjective component. That is, the first way to meet the test (i.e., showing that the risk was "known") is, of course, a subjective question, and the latter path (i.e., the obviousness of the risk) had been deemed, even pre-*Brawner*, as one way to inferentially prove actual knowledge, as the dissent in *Brawner* noted. *See Brawner*, 14 F.4th at 604 (Readler, J., dissenting) (citing cases). Thus, *Brawner*'s recklessness standard, whether labeled a "subjective component" or not, still seems to require a showing similar to what had been required under the subjective component of the pre-*Brawner* test for deliberate indifference claims, as the *Brawner* dissent also noted. *See id.* at 610 ("in terms of the proof necessary to make out such a claim, it is not entirely clear how this objective reasonableness standard differs from our traditional subjective indifference standard").

Perhaps not surprisingly then, even under this reformulated test, the Court still concludes that Howell's claim fails as a matter of law. To see why, start with *Brawner* itself. The facts there certainly provide no help to Howell here. In *Brawner*, jail officials prevented a detainee from taking her prescribed anti-seizure medications for her known epilepsy over a period of almost a week despite her experiencing at least a dozen seizures. *Id.* at 589–90. Nothing like that happened here.

10

And given *Brawner*'s recency, only three subsequent Sixth Circuit decisions have applied its civil recklessness standard. None of those cases helps Howell either.

First, in *Greene v. Crawford*, 22 F.4th 593 (6th Cir. 2022), the Sixth Circuit held that some jail officials were deliberately indifferent when they failed to provide medical care during a period of about four days in which a pretrial detainee experienced severe symptoms of alcohol withdrawal, including two days where he displayed symptoms of delirium tremens such as hallucinations, extremely erratic behavior, and sleeplessness. *Greene*, 22 F.4th at 601–04. The detainee had a very high blood alcohol content at the time of booking, and the officials expected him to experience alcohol withdrawal and correctly interpreted his symptoms as manifesting that condition. *Id.* But even though the officials understood that he was going through alcohol withdrawal, they neither sent him for outside medical care, nor provided him any medical attention within the jail, until about four days after he began experiencing symptoms of alcohol withdrawal, and two days after he began experiencing delirium tremens. *Id.* at 601. Instead, jail officials sought only a mental health evaluation of the detainee, on the basis of which they concluded that he did not need medical care because he was having a mental episode. *Id.* at 603. As a result, the jail officials did not seek any medical attention for the detainee until after he experienced acute respiratory failure, whereupon they transported him to the hospital. *Id.* at 603–04. The detainee died four days later. *Id.*

In the second case, *Britt v. Hamilton County*, Case No. 21-3424, 2022 WL 405847 (6th Cir. Feb. 10, 2022), a divided Sixth Circuit panel concluded in an

11

unpublished opinion that the defendants (who included both Hamilton County and NaphCare) were entitled to summary judgment on claims that they were deliberately indifferent to a pretrial detainee's serious medical need. In *Britt*, the detainee initially exhibited normal vital signs and disclosed to NaphCare nurses that he was a heroin user who had last used the previous day. *Id.* at *1. For the next several days, the detainee continued to exhibit normal vital signs, but also began to display symptoms consistent with heroin withdrawal, such as nausea, vomiting, and diarrhea. *Id.* A few days later, however, he was found unconscious. *Id.* at *2. After rousing the detainee back to consciousness, the nurses determined that he did not need outside medical care because his vital signs continued to be within a normal range, he appeared alert, and he told the nurses he was feeling better. *Id.* Two days later, officers found the detainee acting lethargic with vomit and urine on the floor, abnormal coloration, and an extremely elevated pulse. *Id.* At that point, he was transported to the emergency room and eventually diagnosed with endocarditis, an infection in the lining of the heart. *Id.* He died about three weeks later. *Id.*

Finally, in *Hyman*, a united panel affirmed a grant of summary judgment to an officer and municipal defendants on the deliberate indifference claims of a detainee's estate. *Hyman*, 2022 WL 682543, at *1. Police arrested a detainee on a felony warrant and took him to the Detroit Detention Center. *Id.* Officers searched the detainee for contraband. *Id.* They also asked the detainee whether he was under the influence of any drugs or alcohol, and he said he was not. *Id.* About an hour after the detainee's arrest, officers put the detainee in a "video-arraignment room," a room

with transparent, glass walls designed to hold multiple detainees awaiting arraignment. *Id.* A police officer responsible for making rounds that night looked at the detainees through the glass but did not physically enter the room to check on the detainees, although jail policy required such physical entry. *Id.* About two hours after his arrest, the detainee slid onto the floor of the room, where he remained motionless for several hours during the night. *Id.* When a jail employee found the detainee unresponsive several hours after that, the detainee was transported to the hospital, which discovered narcotics concealed in the detainee's rectum. *Id.* The detainee had died of an accidental drug overdose. *Id.*

*Greene*, *Britt*, and *Hyman* provide substantial guidance as to issues pertinent to resolution at the summary judgment stage of Howell's estate's claims under the post-*Brawner* civil recklessness standard. First, *Greene* shows that at least one pre-*Brawner* rule—that jail staff who are not medical personnel may rely on the medical opinions of professionals—remains good law in the Sixth Circuit. *See Greene*, 22 F.4th at 608 (quoting *McGaw v. Sevier Cnty., Tenn.*, 715 F. App'x 495, 498–99 (6th Cir. 2017) (when "an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice")). *Greene* did not suggest that *Brawner* changed anything about this general principle, which *Greene* cited approvingly. Instead, the problem in *Greene* was that jail officials apparently relied on a mental health counselor, who was *not* a medical professional, to conclude that a detainee did not need medical care. *Id.*

13

Again, nothing like *Greene*'s facts occurred here. Rather, in this case, the Hamilton County Defendants relied on the conclusion from trained NaphCare nurses that Howell did not need immediate medical care. (*See* Op., Doc. 105, #2004). For the reasons explained at length in the Court's previous Opinion (*id.*), the "general principle that an officer may rely on the judgments of medical personnel concerning a detainee's need for medical care"—a principle that apparently remains valid under *Brawner*'s civil recklessness standard—entitles the individual Hamilton County Defendants to summary judgment. The Hamilton County Defendants did not act recklessly in relying on the NaphCare Defendants' determination that Howell was having a psychiatric episode. At the very least, they are entitled to qualified immunity, because it was not clearly established that following the recommendation of medical personnel could have amounted to deliberate indifference under such circumstances. *Cf. Greene*, 22 F.4th at 615.

Second, *Hyman* illustrates that *Brawner*'s recklessness standard should not change the Court's conclusion that the individual Hamilton County Defendants are entitled to summary judgment even though they failed to check on Howell as frequently as jail policy required while Howell was in the restraint chair. *See Hyman*, 2022 WL 682543, at *3 (quoting *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) ("'failure to follow internal policies, without more,' does not equal deliberate indifference")). As the Court noted, on the record before it, "serious medical risk to an inmate in a restraint chair is very much the exception rather than the norm." (Op., Doc. 105, #2006). Thus, "a jury could not reasonably infer that

14

[placement in a restraint chair] created an objective risk of serious harm." (*Id.*). For the same reason, a reasonable jury could not conclude that it was reckless to fail to check on Howell more frequently during the at most four hours that Howell was alive in the restraint chair. And given the NaphCare Defendants' determination that Howell was not experiencing a physiological medical episode that required outside care, a reasonable jury could not conclude that any medical risk to Howell was "so obvious that it should be known" to the Hamilton County Defendants during the time after Howell's placement in the restraint chair. *Brawner*, 14 F.4th at 596; (*see also* Op., Doc. 105, #2001–02 ("to the extent that Erwin and Collini may ever have become aware of any serious medical need on Howell's part, they did not consciously disregard that need, but rather sought medical attention for Howell in the sallyport")).

Third, *Britt* reaffirmed the validity of yet another principle on which the Court relied in granting summary judgment to the individual NaphCare Defendants. As this Court put it in the previous decision, "when nursing staff did not know that [an individual] suffered from a serious medical ailment, and they instead interpreted his symptoms as indicating a different condition, for which they provided appropriate treatment, they were not deliberately indifferent to his serious medical needs." (Op., Doc. 105, #2021–22 (quoting *Rouster v. Cnty. of Saginaw,* 749 F.3d 437, 453 (6th Cir. 2014) (internal quotation marks omitted))). *Britt* used almost identical language in affirming a grant of summary judgment under the post-*Brawner* standard: "[the nurse's] care could have risen to deliberate indifference only if [the detainee's]

15

symptoms had been clearly inconsistent with heroin withdrawal and she had failed to confirm that his symptoms were not indicative of a different and more serious condition." *Britt*, 2022 WL 405847, at *3 (citing *Rouster*, 749 F.3d at 451) (internal quotation marks and modification omitted). In other words, *Brawner*'s civil recklessness standard does not require nurses to correctly diagnose a pretrial detainee's condition. To the contrary, a mistaken diagnosis will not amount to deliberate indifference unless it is both "clearly inconsistent" with the detainee's symptoms *and* reflective of a failure to rule out other explanations. *See Britt*, 2022 WL 405847, at *3.

For example, in *Britt*, the nurses operated on the belief that the detainee was not experiencing any condition more serious than heroin withdrawal. *See Britt*, 2022 WL 405847, at *3. That belief was ultimately mistaken, but it was not "clearly inconsistent" with the symptoms the nurses perceived at the time. *Id*. By contrast, the jail officials in *Greene* understood from the beginning that the detainee was experiencing alcohol withdrawal, a condition of which delirium tremens is a well-known life-threatening complication. *See Greene*, 22 F.4th at 598, 601. Given that awareness, their failure to secure any medical attention at all for the detainee over a period of four days could have constituted recklessness. *Id*. at 609. Importantly, the jail officials did not mistakenly diagnose the detainee in *Greene*; they could not have diagnosed him at all, mistakenly or otherwise, because they were not medical professionals. Instead, the jail officials sought no medical attention for the detainee,

16

even though they were aware that he was experiencing alcohol withdrawal and severe symptoms including hallucinations.

For the reasons explained at length in the Court's Opinion (Doc. 105, #2022–32), the principle that nurses are not deliberately indifferent when they provide treatment pursuant to a diagnosis consistent with the detainee's symptoms, even if that diagnosis is ultimately mistaken, entitles the individual NaphCare Defendants to summary judgment as to Howell's estate's deliberate indifference claims. Howell's symptoms were not "clearly inconsistent" with a psychiatric episode. *Britt*, 2022 WL 405847, at *3. Moreover, the individual NaphCare Defendants took steps to "confirm that [Howell's] symptoms were not indicative of a different and more serious condition," including checking Howell's vital signs, which were normal, and offering him hydration, a glucose tablet, and a urine test, all of which he refused. *Id*. The fact that the NaphCare Defendants may have ultimately been incorrect about Howell's condition is insufficient to establish recklessness. Instead, the NaphCare Defendants are entitled to summary judgment because they understood Howell to be experiencing a psychiatric episode on the basis of symptoms not "clearly inconsistent" with that diagnosis, and because of their efforts to rule out "a different and more serious condition." *See Britt*, 2022 WL 405847, at *3.

Fourth, and relatedly, an expert's opinion that a nurse's care was "grossly negligent" and fell "below the standard of care," while undoubtedly relevant to medical malpractice claims, is insufficient to create a genuine dispute as to recklessness for purposes of a constitutional deliberate indifference claim. *See Britt*,

17

2022 WL 405847, at *3. Instead, the fact that a detainee's symptoms were "consistent" with a nurse's ultimately erroneous diagnosis defeats a claim for deliberate indifference, as discussed above. So do the nurses' efforts to "confirm that [the detainee's] symptoms were not indicative of a different and more serious condition." *Id*. Accordingly, and for the reasons discussed in the Court's Opinion (Doc. 105, #2025–26), Howell's estate's expert evidence does not create a genuine dispute as to the individual NaphCare Defendants' deliberate indifference to Howell's medical need.

Finally, *Greene*, *Britt*, and *Hyman* all illustrate that it matters how long a detainee goes without receiving medical attention, both initially and as his condition worsens. In *Greene*, the detainee did not receive any medical attention during four days of confinement despite displaying symptoms of delirium tremens for two of those four days and of alcohol withdrawal during the entire period. *See Greene*, 22 F.4th at 601, 607. In *Britt*, by contrast, even though the nurses found the detainee unconscious a few days before they ultimately sent him to the hospital, and thus arguably did not recognize and react to the seriousness of his condition as promptly as they could have, the nurses still examined the detainee at least once per day. *See Britt*, 2022 WL 405847, at *1, 3. In *Hyman*, the detainee was dead at most seven hours after his arrest, and nothing about his observable condition at the time of booking suggested that he was likely to need urgent medical attention within the next several hours. *See Hyman*, 2022 WL 682543, at *1. In the instant case, Howell received medical attention almost immediately after his fight with the other inmate, and he died about

18

four hours after receiving that medical attention. The relatively short duration of time that Howell went without receiving medical care, combined with the absence of symptoms or other circumstances that would have made a need for urgent medical care apparent, does not support a finding of deliberate indifference.

Indeed, as this Court noted in reference to the district court's opinion in *Britt* (*see* Op., Doc. 105, #2030–31 (citing *Britt v. Hamilton Cnty.*, 531 F. Supp. 3d 1309 (S.D. Ohio 2021))), the case for deliberate indifference here is substantially weaker than on the facts of *Britt*. Howell experienced symptoms for, at most, a few hours, rather than days, and those symptoms would have appeared much less extreme to the Defendants here than those exhibited by the detainee in *Britt*. The Court acknowledges that *Britt* is an unpublished decision with a dissent, but still considers the case to be the most closely applicable guidance from the Sixth Circuit regarding application of *Brawner*'s new civil recklessness standard to the facts of this case. Moreover, *Britt*'s reasoning relies on, and is consistent with, other established principles in the Sixth Circuit regarding deliberate indifference to serious medical need, principles on which the Court also relied in its previous Opinion (Doc. 105). Under those principles, the Court concludes that its disposition of this case should not change under *Brawner*'s recklessness standard. Assuming that the post-*Brawner* standard is in fact substantively different from the pre-*Brawner* standard, rather than essentially the same test applied under a different label, there may be cases where the precise contours of that difference could be outcome determinative, but, as *Greene*, *Britt*, and *Hyman* aptly illustrate, this case is not one of them.

## CONCLUSION

Howell's death was a tragedy. But on the facts here, it does not give rise to a viable deliberate indifference claim, even under *Brawner*. Accordingly, for the reasons set forth above, the Court **DENIES** Howell's estate's Motion for Relief from Judgment (Doc. 112).

**SO ORDERED.**

March 11, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**